UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No. 10-20837-CIV-COOKE/GOODMAN

RUBEN REYES, on his own behalf and all
similarly situated individuals

       Plaintiff,

v.

AT&T MOBILITY SERVICES LLC,

       Defendant.

_____/

**REPORT AND RECOMMENDATIONS ON PLAINTIFF'S MOTION
TO CONDITIONALLY CERTIFY COLLECTIVE ACTION AND
FACILITATE NOTICE TO POTENTIAL CLASS MEMBERS**

This cause is before me for a report and recommendations on the Motion of Plaintiff,

Ruben Reyes, to Conditionally Certify Collective Action and Facilitate Notice to Potential Class

Members.[1]  (DE# 74.)  For the reasons outlined below, and based on the comparatively flexible,

lenient standard applicable to this stage, I respectfully recommend that the District Court grant

Plaintiff's motion.

## I.      Background

Plaintiff worked as a Retail Account Executive for Defendant in the Miami metropolitan

area from January 2007 to March 2010.  (DE# 9, ¶ 17; DE# 101, p. 16.)  Plaintiff claims that

except for during the first two months of his employment, he at various times worked more than

forty hours per week and was a non-exempt employee under the Fair Labor Standards Act, 29

---

[1]      This case was originally assigned to Magistrate Judge Ted E. Bandstra for appropriate resolution of all non-dispositive pretrial matters and for a report and recommendation on Plaintiff's Motion to Conditionally Certify Collective Action and to Facilitate Notice to Potential Class Members by United States District Judge Marcia G. Cooke.  (DE# 18; DE# 107.) Magistrate Judge Bandstra transferred his referrals to me pursuant to Administrative Order 2010-79.  (DE# 110.)

U.S.C. § 207, but was never paid overtime as that Act required.  (DE# 9, ¶¶ 19-21.)  Plaintiff believes there are other similarly situated individuals who would, if offered the chance, join his lawsuit against Defendant.  (*E.g. id.* at ¶ 15; DE# 74, p. 13.)

Defendant is a wireless communications provider with approximately ninety-million subscribers in the United States.  (DE# 101, p. 2.)  Defendant sells its products directly through approximately two-thousand company-owned retail stores nationwide and indirectly through generally exclusive relationships with independent stores (the "local dealer channel") as well as through non-exclusive arrangements with large national retail chain stores (the "national retail channel").  (*Id.*)  Through its local and national retail channels, Defendant operates in all fifty states, Puerto Rico, and the District of Columbia.  (*Id.* at p. 3.)  National retail channel retailers are "big box" stores such as RadioShack, Best Buy, and Wal-Mart.  (*Id.*)  Local retail chain retailers vary from "mom and pop" single-shop enterprises to businesses with multiple locations in multiple markets.  (*Id.*)

Plaintiff seeks conditional certification of the following class: all "'Retail Account Executives' who were paid salary plus commissions and who earned less than $100,000.00 per year for any period of their employment," with Defendant, AT&T Mobility Services LLC, "within the statute of limitations and who were not paid full and proper overtime compensation for hours worked over forty (40) in a workweek."  (DE# 74, p. 1.)

In support of his motion, Plaintiff offered his own affidavit and those of eight other individuals who worked as either local or national Retail Account Executives for Defendant.  (Reyes Aff. DE# 75-1; Aviles Aff. DE# 75-2; Birch Aff. DE# 75-2; Feliciano Aff. DE# 75-2; Fernandez Aff. DE# 75-2; Salden Aff. DE# 75-2; Hicks Aff. DE# 76-1; Urquhart Aff. 111-1; Roggensack Aff. DE# 115-1.)  All of the affiants are already opt-in plaintiffs except for Hicks,

who indicated that he will likely opt-in if this case is certified as a collective action.  (DE# 76-1, ¶ 26.)  Plaintiff's affidavit also indicates that two additional individuals, Teresa Freeman and Luis Granados, would opt-in if they were given formal notice of this case.  (DE# 75-1, ¶ 26.)

The affiants worked in the following locations: Miami-Dade, Broward, Collier, Lee, and Hillsborough counties in Florida; Bergen County in New Jersey; the State of Minnesota; and the State of South Carolina.  (*See* all affidavits.)  All of the affidavits are virtually identical, except for Urquhart and Roggensack's affidavits, which are more detailed in certain regards but still substantially similar to the rest.  All affiants state that they were (or still are) one of many Retail Account Executives employed nationwide to perform certain uniform duties for the purpose of developing and maintaining Defendant's relationships with retail dealers.  (*E.g.*, DE# 75-1, ¶¶ 6-10.)

To ensure that these duties were performed in a consistent manner, Defendant purportedly had specific training programs that all Retail Account Executives were required to complete.  (*E.g.*, *id.* at ¶ 11.)  All affiants claim to have been responsible for regularly scheduled retail dealer site visits and for gathering sales data on each retail dealer and reporting that information to Defendant for further processing.  (*E.g.*, *id.* at ¶¶ 13 & 15.)  All affiants also state that they regularly worked more than forty hours per week but received no overtime pay.  (*E.g.*, *id.* at ¶ 17.)

Plaintiff, Birch, and Fernandez specifically describe in their affidavits a meeting on or about May 4, 2009, at which they received an FLSA classification notice informing them that, based upon an internal audit, Defendant had determined that all Retail Account Executives were non-exempt and thus eligible to receive overtime pay.[2]  (*E.g.*, DE# 75-2, p. 11-12, ¶¶ 19 & 25.)

---

[2]   Defendant confirmed that this notice also was sent via email to *all* Retail Account Executives throughout the country on May 4, 2009.  (DE# 101, p. 17.)

Aviles' affidavit does not recount a meeting but notes receiving the same classification notice and being told that it was premised on the fact "we all performed the same duties and were paid in the same manner, salary plus commissions." (DE# 75-2, p. 4, ¶ 4.) Plaintiff, Aviles, Fernandez, and Birch also indicate that they have spoken to at least one other current or former Retail Account Executive, whose affidavit is not already before the Court, and who informed them that this person would opt-into this case if given formal notice. (DE# 75-1, p. 6, ¶ 26; DE# 75-2, p. 5, ¶ 26; DE# 75-2, p. 12, ¶ 26; DE# 75-2, p. 34, ¶ 26.)

Urquhart and Roggensack provide more details than the other affiants regarding claimed similarities among Retail Account Executives' training and the job as practiced in serving the local versus national dealer channels.[3] (*E.g.*, DE# 111-1, ¶¶ 19 & 32.) For instance, unlike the other affiants, who do not precisely identify the type of retailers they worked with as a Retail Account Executive, Urquhart and Roggensack explain that they at various times worked only with national retailers, only with "mom and pop" retailers, or both simultaneously. (DE# 111-1, ¶¶ 9-13; DE# 115-1, ¶¶ 9-13.) Urquhart and Roggensack outline a similar payment methodology and further explain that their duties "did not vary in any significant way" regardless of the particular type of retailers they happened to be working with at any given time. (DE# 111-1, ¶¶ 14-15, & 32; DE# 115-1, ¶¶ 14-15, & 32.) These two affiants also explained that they know that certain training they received was provided nationwide because it was taught online and the

---

[3]     These two affidavits were filed after Defendant filed its response to Plaintiff's motion. As will be discussed more fully below, Defendant's opposition to conditional certification is primarily premised on its contention that the term Retail Account Executive actually encompasses three *separate* jobs with different duties. (DE# 101, p. 3.) Plaintiff appears to have filed these two affidavits in fulfillment of the Eleventh Circuit's mandate that in order to obtain conditional certification a plaintiff must "successfully engage defendants' affidavits" in opposition to their motion. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (internal citation marks omitted).

computer screen identified each participant by name.  (DE# 111-1, ¶¶ 18-19; DE# 115-1, ¶¶ 18-19.)

In addition to submitting the affidavits, Plaintiff provided other documentation in support of his motion.  As mentioned above, Plaintiff provided copies of a May 4, 2009, "Notification for FLSA Classification," which indicates that Defendant audited the position of Retail Account Executive and decided to reclassify it as "Non-Exempt (eligible for overtime)" from "exempt (not eligible for overtime)."  (*E.g.*, DE# 75-1, p. 8.)  At the hearing, defense counsel, in response to a question, explained that this notice went to all categories of account executives, even though it referenced only retail account executives. Plaintiff also attached to his motion computer printouts, all printed on the same day, from Defendant's website, advertising Retail Account Executive positions in Anchorage, Alaska, Pittsburg, Pennsylvania, Shreveport, Louisiana, and Bethpage, New York.[4]  (DE# 111-2 – 111-5.)  All of these advertisements are in every way (excepting location) identical.  All list the same duties, qualifications, and pay.

## II.      Standard

29 U.S.C § 216(b) of the Fair Labor Standards Act authorizes one or more employees to bring a collective action against their employer for unpaid minimum wages or unpaid overtime "for and in behalf of himself or themselves and other employees similarly situated."  Unlike a Rule 23 class action, in which each person falling within a certified class is bound by the judgment unless he or she opts out, each putative plaintiff must affirmatively opt-*into* a § 216(b) class action.  *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001).

---

[4]      These printouts were filed in addition to the five printouts attached to Plaintiff's amended complaint. The five complaint printouts advertise the same position using identical language in Bartlesville, Oklahoma, the State of Hawaii, Cleveland and Columbus, Ohio, and Taylorsville, Utah.  (DE# 9-1.)

The Eleventh Circuit suggests that district courts use a two-stage process in deciding whether to create an opt-in class and to facilitate notice. *Id.* at 1219.

The first stage, where the Court currently finds itself, is known as the "notice" or "conditional certification" stage. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260-61 (11th Cir. 2008). At this stage, a district court may grant conditional certification if a plaintiff demonstrates a reasonable basis to believe that: (1) there are other employees of the Defendant who desire to opt-in and (2) that these other employees are "'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Morgan*, 551 F.3d at 1260.

To satisfy the reasonable basis test, a plaintiff must have "more than 'only counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs'" exist. *Morgan*, 551 F.3d at 1261 (quoting *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983)). A plaintiff "may meet this burden, which is not heavy," by making "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (internal citation and quotation omitted). *See also Morgan*, 551 F.3d at 1261 (describing this burden as "not particularly stringent," "fairly lenient," "flexible," "not heavy," and "less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008) (internal citations and quotations omitted). A plaintiff need not show that his position is "identical" to the position held by any other putative class member. *Grayson*, 79 F.3d at 1096.

The requirements for conditional certification under § 216(b) "are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure." *Grayson*, 79 F.3d at 1096 n.2.

The Eleventh Circuit has stated that a "district court's broad discretion at the notice stage [when deciding whether to conditionally certify a class] is thus constrained, to some extent, by the leniency of the standard for the exercise of that discretion." *Morgan*, 551 F.3d at 1261. Where, as here, a court has "minimal evidence" from the parties and discovery has not been completed, the typical result is that the motion is granted. *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003) (quoting *Hipp*, 252 F.3d at 1216)). *But see, e.g., Holt v. Rite Aid Corp*, 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004) (more "carefully consider[ing] the submissions of the parties with respect to the collective action allegations" at the first stage because "the parties have conducted extensive discovery"). *See also Morgan*, 551 F.3d at 1262 (stating that "detailed pleadings and affidavits" may suffice to demonstrate reasonable basis that other employees are "similarly situated" and refusing to "hold that the [relatively substantial] amount of discovery that preceded the first-stage certification here is required")

### a.   Other Opt-in Plaintiffs

I find that Plaintiff has shown a reasonable basis to believe that there are other employees who desire to opt-in.  One of the affiants, Michael Hicks, states in his affidavit that if "this case is certified as a Collective Action, I will likely opt-in and become a plaintiff."  (DE# 76-1, p. 6, ¶ 26.)  Four other affiants, Plaintiff, Aviles, Fernandez, and Birch, indicated they have spoken to at least one other person who would also opt-in.  (DE# 75-1, p. 6, ¶ 26; DE# 75-2, p. 5, ¶ 26; DE# 75-2, p. 12, ¶ 26; DE# 75-2, p. 34, ¶ 26.)   Moreover,  seven  allegedly  similarly  situated

employees have already filed consents indicating that they desire to join should this case be certified.  (DE# 5; DE# 8; DE# 10; DE# 11; DE# 17; DE# 103; DE# 114.)

It is therefore clear for purposes of a conditional certification analysis that a reasonable basis exists to believe there are other employees who desire to opt-in.  *See Tyler v. Payless Shoe Source, Inc.*, No. 22:05-CV-33F(WO), 2005 WL 3133763, at *3 (M.D. Ala. Nov. 23, 2005) (finding that three consents to join filed by putative opt-in plaintiffs is sufficient to satisfy this prong); *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1334 (finding that affidavits of other allegedly similarly situated employees expressing a desire to opt-in satisfies this prong): *Bell v. Mynt Entm't, LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (the affidavits of seven opt-in plaintiffs indicating they were aware of others expressing desire to join suit if certified are sufficient).

### b.  Similarly Situated Employees

I also find that Plaintiff has met his burden at this preliminarily stage and demonstrated a reasonable basis to believe that there is a similarly situated class of employees, including those who would likely opt-in this lawsuit, of all "'Retail Account Executives' who were paid salary plus commissions and who earned less than $100,000.00 per year for any period of their employment," with Defendant, AT&T Mobility Services LLC, "within the statute of limitations and who were not paid full and proper overtime compensation for hours worked over forty (40) in a workweek."  (DE# 74, p. 1.)

As I detail above, Plaintiff provided evidence that tells a consistent story about similarly situated employees.  To be more specific, Plaintiff's evidence demonstrates that each affiant worked as a Retail Account Executive, that in that position they had certain duties standard to all other Retail Account Executives, that each was paid in the same manner, that each regularly

worked more than forty hours per week and that each was paid in the same way that did not include overtime pay. *See Dybach*, 942 F.2d at 1567-68 (holding that to gain conditional certification a plaintiff need only show that the class is "'similarly situated' with respect to their job requirements and with regard to their pay provisions"). *See also Vondriska*, 564 F. Supp. 2d at 1335 (granting conditional certification where same facts shown and declining to consider alleged duty or location variations); *Scott v. Heartland Home Fin., Inc.*, No. 1:05-CV-2812-TWT, 2006 WL 1209813, at *3 (N.D. Ga. May. 3, 2006) (same); *Pendlebury v. Starbucks Coffee Co.*, No. 04-CV-80521, 2005 WL 84500, at *3 (S.D. Fla. Jan. 3, 2005) (granting conditional certification and refusing to consider factual dispute raised by defendant at conditional notification stage where plaintiff offered affidavits establishing a similarly situated class).

Defendant opposes Plaintiff's motion because it contends that the term Retail Account Executive actually encompasses three separate jobs with different duties. (DE# 101, p. 3.) Defendant states that there are Retail Account Executives, who work in the local dealer channel, National Retail Account Executives, who work in the national retail distribution channel, and "hybrids," who work in both channels in some parts of the country. (*Id.* at p. 1.) Defendant claims that Plaintiff, who worked only in one metropolitan area with only one national chain (i.e., RadioShack), was a National Retail Account Executive. Therefore, says Defendant, Plaintiff's experience cannot be representative of the full spectrum of Retail Account Executive positions and he could not know about the jobs of other types of Retail Account Executives. Defendant also argues that the other affidavits attached to Plaintiff's initial motion suffer from similar defects.

Defendant filed a substantial number of affidavits with its response.  (DE# 102.)  These affidavits detail claimed differences between not only the duties of the three purportedly separate jobs, but also between any given employee's duties within the same job.

For instance, according to Michael Combs, a hybrid Retail Account Executive from Southern Oregon, national retailers restrict his ability to train their employees and much of what he uses to train them is developed "by a team which includes Area Retail Sales Managers and National Retail Sales Managers."  In contrast, Combs says in his affidavit, local retailers allow him more freedom to "develop" and "customize" his own trainings for local retailers' employees based upon Defendant's official trainings.  (DE# 102, p. 34, ¶¶ 4-5.)  Combs also notes that among local retailers with whom he works, some, including ProWireless, consult him on operational issues, but most do not.  (*Id.* at ¶23.)  Moreover, Jeff Chancellor, Defendant's Senior Sales Program Execution Manager, states that some National Retail Account Executives are assigned only to a single store while others are assigned to territories that may include multiple different retailers, thereby creating "an obvious different set of challenges and opportunities." (DE# 102, p. 28, ¶ 10.)

Similar to strategies commonly and expectedly used by employers named as defendants in collective action overtime wage lawsuits, Defendant's attempt, in effect, to seek a factual determination on the similarly situated question by presenting a vast amount of affidavit evidence "demonstrate[s] a fundamental misunderstanding of the nature of the proceedings at this stage of litigation."[5]  *Morden v. T-Mobile USA, Inc.*, No. C05-2112RSM, 2006 WL

---

[5]      Defendant also filed a motion to strike key portions of the affidavits attached to Plaintiff's motion.  (DE# 100.)  Defendant argued in that motion that affidavit paragraphs purporting to claim that the affiant knew uniform information that accurately described all Retail Account Executives, regardless of location or type (e.g., national v. local), was incredible despite the affiant's sworn representation that his affidavit was made on personal knowledge.  One of the grounds on which I determined that motion should be denied was that, where an affidavit stated

2620320, at *3 (W.D. Wash. Sept. 12, 2006) (refusing to consider defendant's argument that the evidence shows the requested class was not similarly situated where plaintiffs provided evidence that the particular employee type was uniformly classified as non-exempt by the employer and performed similar job duties during all relevant time periods).

At this stage of the proceedings, a defendant's burden is, for all practical purposes, to attempt to demonstrate that a plaintiff has presented *insufficient*, not factually wrong, evidence. In fact, at the hearing, defense counsel, in attempting to show that his approach would not lead to an impermissible credibility conclusion from competing affidavits, argued that the court could assess credibility in the context of determining the adequacy of Plaintiff's allegations about similarly situated employees.

In keeping with the practical approach which shuns credibility battles at the first stage,[6] "in all but a handful of cases, [where discovery has already occurred,] the individual factual analysis is **saved** for the second stage of certification." *Simpkins v. Pulte Home Corp.*, No. 6:08-cv-130-Orl-19DAB, 2008 WL 3927275, at *5 (M.D. Fla. Aug. 21, 2008) (emphasis added) (refusing to strictly review affidavits submitted by plaintiff simply because defendant submitted a large number of its own affidavits that explained "what it perceives as factual differences between members of the potential opt-in class") (citing *Hipp*, 252 F.3d at 1218)). *See also Morden*, 2006 WL 2620320 at *3 (noting that such arguments are "more appropriate, and may even be successful, on a motion for decertification").

---

on its face that it was made on personal knowledge, it was inappropriate to make any further credibility determination at this conditional certification stage. (DE# 134.)

[6]     *Cf. Burch v. Quest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (In the first stage, "[t]he court does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties at this initial stage").

Nevertheless, a defendant is certainly free to offer contrary evidence in an attempt, for instance, to demonstrate that the plaintiff has provided only conclusory allegations or has omitted important information.  In fact, while Defendant likely did not need to file so many affidavits, it was certainly appropriate for it to file affidavits or other evidence in an effort to demonstrate that Plaintiff's initial motion and evidence oversimplified the purported diversity within the Retail Account Executive category.  After a defendant submits evidence to promote that permissible purpose, it is incumbent upon a plaintiff to provide additional evidence to meet the defendant's evidence.  This is surely what is contemplated by the Eleventh Circuit's instruction that a plaintiff must "successfully engage defendants' affidavits" in opposition to their motion. *Grayson*, 79 F.3d at 1097.

To the extent that Defendant's mass of affidavit evidence supports the defense theory that there are actually three positions encompassed by the Retail Account Executive category, however, I find Plaintiff "successfully engaged" these affidavits by filing Urquhart and Roggensack's affidavits.  These two additional affidavits establish sufficiently for purposes of conditional certification that all three types of Retail Account Executive are similarly situated under § 216(b).  It is possible that the affiants whose affidavits were attached to Plaintiff's original motion may also be able to provide more specific information supporting certification at the second stage.  It is also possible that these affiants cannot do so and that Plaintiff will be unable to demonstrate that, despite Urquhart and Roggensack's contentions, the three positions are in fact similarly situated.  This is clearly a determination more suitable (and which may even be successful) at the stage two, final certification analysis, after the parties have conducted discovery sufficient to hash out these factual issues.  *Morgan*, 551 F.3d at 1260 (the "decertification decision is one where the court 'makes a factual determination on the similarly

situated question'") (quoting *Hipp*, 252 F3d at 1208)). *Accord Morden*, 2006 WL 2620320 at *3.

That said, it is important to note that Plaintiff provided more than just a few affidavits supporting the existence of a similarly situated class of employees. As also discussed above, Plaintiff filed a notice created by Defendant that, without any distinction between the argued categories of executive, states that Defendant itself concluded that the job "Retail Account Executive" is non-exempt and eligible for overtime. At the hearing, Defendant acknowledged not only that it gave such a bulletin to all Retail Account Executives, but also confirmed that an email containing this information was sent to **all** Retail Account Executives – regardless of which of the three so-called categories of retail account executive they worked under for Defendant. *See Kreher v. City of Atlanta, Ga.*, No. 1:04-CV-2651-WSD, 2006 WL 739572, at *3 n.8 (N.D. Ga. March 20, 2006) (holding that once a plaintiff demonstrates a class of employees was subject to the same common policy which allegedly violated the FLSA, the question of whether individual differences between class members makes their claims ill-suited for a collective action will be considered during the *second* stage decertification analysis).

In addition, defense counsel, at the hearing, represented that Defendant did not distribute by email a similar notice or bulletin, advising affected employees that the non-exempt decision was, upon further analysis, only tentative, had been reconsidered and no longer applied. Moreover, the news about the inapplicability or reconsideration of the nationally broadcast (by email) memo was sometimes distributed in local or regional joint meetings attended by all three categories of account executives.

Last, but certainly not least in connection with Defendant's efforts to submit evidence to support its "the-position-is-actually-three-positions" and "the-job-duties-vary-among-

geographic-markets" theories, Plaintiff filed website printouts advertising identically described Retail Account Executive positions in nine states or cities spread across the United States.

Defendant claims that too many "significant differences exist between and among the three jobs themselves" to warrant collective treatment.  (DE# 101, p. 9.)  But Defendant's own affidavits are at times themselves contradictory as to whether this is true.  For instance, Chancellor's affidavit states that both national and local Retail Account Executives "have **similar** compensation terms," while the affidavit of Beth Admire, Defendant's Director of Sales in the Greater Los Angeles market, indicates that Retail Account Executives who sell "wired" products are compensated **differently** than those who do not.  (DE# 102, p. 3, ¶ 8; DE# 102, p. 27, ¶ 7.)  *See Dybach*, 942 F. 2d at 1567-68 (defining similarity of pay provisions as half of the "similarly situated" analysis).

Given the leniency with which I must approach my analysis, it would be inappropriate to resolve factual ambiguities only overtly manifested in Defendant's own evidence against Plaintiff (as Plaintiff's evidence is that all Retail Account Executives share similar compensation terms).  The contradictions in Defendant's own submissions also underscore the practical conclusion that it is premature before discovery at the conditional certification stage to make the requested factual findings.  This is especially true where, as here, Plaintiff has offered consistent evidence of similarity and, when the sufficiency of the detailed nature of that evidence was questioned in Defendant's response, Plaintiff produced more-specific affidavits that on their face address Defendant's concerns.

Moreover, to the extent Defendant requests that the Court delve into individualized classification questions, I believe a fair reading of the law is that this is not appropriate in a situation, such as here, where the Defendant uses the same general term to describe all members

of the class and discovery has not yet been conducted. *Compare, e.g., Holt*, 333 F. Supp. 2d at 1274 (suggesting that courts will only conduct an individualized inquiry into class members' differences at this stage where "the parties have conducted extensive discovery"); *with Aguirre v. SBC Commc'ns, Inc.*, No. Civ.A. H-05-3198, 2006 WL 964554, at *7 (S.D. Tex. April 11, 2006) (declining to conditionally certify a class in part because it was *undisputed* the requested class included employees with two different job titles); *and also with Hipp*, 252 F.3d at 1219 (affirming conditional certification despite defendant's contention that each potential class member was unique and required an individual analysis of their working conditions because they all held same job title and alleged same treatment).

In this regard, this case is similar to *Morden v. T-Mobile USA, Inc.*, 2006 WL 2620320 at *3, a case also involving employees of a wireless telephone equipment and service company. While *Morden* does not provide sufficient factual detail for me to say that the employees at issue there were identical to the requested class here, the description in that case suggests they may have performed similar duties. *Id.* at *1. Moreover, in *Morden*, the defendant argued against conditional certification on the ground that "certain exemption defenses may apply that will require the court to make individual assessments of all the plaintiffs." *Id.* at *3. That court refused to consider these questions at this first stage and noted that to apply such a "stringent analysis" at this stage would be "contrary to the broad remedial policies underlying the FLSA." *Id.* The *Morden* court advised that it would only make that analysis after discovery is complete. *Id.*

Likewise, whether the requested class in this case actually includes similarly situated individuals (and thus serves judicial economy) is a question more appropriately addressed at the decertification stage, when more specific information will be available. *Vondriska*, 564 F. Supp.

2d 1330 (also suggesting that waiting until the decertification stage to consider these issues is the general practice in the Eleventh Circuit).  (*See also* DE# 101, p. 24 (admitting that "the court need not reach the merits of the exemption issue at the conditional certification stage").)

Of course, none of this evidence which now supports Plaintiff's motion at this preliminary first stage is conclusive on the issue of whether the exempt/non-exempt classification was correct or whether the requested class should ultimately remain certified. Should the District Court adopt my recommendation, Defendant may well still prevail when it inevitably moves for decertification.  However, these other pieces of evidence certainly bolster the conclusion that it is reasonable to believe there exists a similarly situated class of employees. *Simpkins*, 2008 WL 3927275 at *7 (noting that defendant's decision to classify all employees with same title as exempt from overtime under same FLSA exemption lent credence to plaintiff's cookie-cutter affidavits at conditional certification stage); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D. N.Y 1997) (holding there is "no question, therefore, that plaintiffs have shown a factual nexus between their situation and the situation of other current and former" employees where defendant admitted it had a uniform policy regarding them all).

Assuming that the District Court adopts my recommendation to grant Plaintiff's motion to conditionally certify the class, this may result in a "be careful what you wish for" scenario[7] for

---

[7]     The original source for the old adage of "be careful what you wish for" may be untraceable, but it may well date back more than 200 years, to Goethe (1749-1832).  *See Ulysses by James Joyce, Episode 9 – Scylla and Charybdis,* http:///www.online-literature.com/james_joyce/ulysses/9 (last visited Jan. 6, 2011) ("That may be too, Stephen said. There is a saying of Goethe's' which Mr. Magee likes to quote. 'Beware of what you wish for in youth because you will get it in middle life'").

Nineteenth century writer Sarah Orne Jewett used a similar adage in *A Native of Winby*, a short story published in the May 1891 edition of *The Atlantic Monthly* (vol. 67, Issue 403). Specifically, she wrote: "Be careful what you wish for in this world, for if you wish hard enough you are sure to get it. I once heard a very wise man say this, and the longer I live the more firmly I                     believe                     it                     to                     be                     true."

Plaintiff and counsel.  As outlined above, the standard used to assess a motion to decertify the

class (i.e., the second-stage analysis) is significantly more onerous for plaintiffs.  As a result,

courts routinely grant motions to decertify a class after the discovery period following the initial,

conditional certification.  *See* Order, *Shim v Echosphere, L.L.C.*, No 10-60024-Civ-Zloch, DE#

88 (S.D. Fla. Dec. 22, 2010) (denying conditional certification at first stage and noting that the

second analysis is "much more stringent than the first").  *See also Lugo v Farmer's Pride, Inc.*,

2010 WL 3370809 (E.D. Pa. Aug. 25, 2010) (granting motion to decertify the collective action

class of chicken processing plant employees, explaining that a higher level of proof is necessary

and outlining the factors used in the second-stage analysis).  I mentioned the "careful-what-you-

wish-for" adage to Plaintiff's counsel at the hearing and he acknowledged his familiarity with the

maxim.[8]

---

http://digital.library.cornell.edu/cache/c/6/f/c6fld36383ff65e859ca24648b1a3302/atla0067   (last
visited Jan. 6, 2011).

Even contemporary musicians and singers invoke this maxim.  For example, rap/hip-hop
artist Eminem, on his "Relapse" album, released a bonus track song in 2009 entitled "Careful
What You Wish For."  In that song, the Detroit-area native gave this musical advice: "So be
careful      what      you      wish      for      'Cause      you      just      might      get      it."
http://www.lyricsmode.com/lyrics/e/eminem/careful_what-you-wish_for.html (last visited Jan. 6,
2011).  In addition to using a mildly modified version of the old adage, Eminem (a/k/a Marshall
Mathers and "Slim Shady") also said a lot of other things in the song's lyrics.  Many of those
these lyrics are too graphic, too earthy and/or too provocative to repeat here.

Oscar Wilde (1854 – 1900), who often wrote of the human condition during the height of
the Victorian Era in England in the late 1800s, used a similar phrase – "When the gods wish to
punish    us,    they    answer    our    prayers"    –    in    *An    Ideal    Husband*    (1893),
http://www.quotationspage.com/search.php3?search=wish&startsearch   (last   visited   Jan.   10,
2011).  Approximately a century later, actress Meryl Streep, playing the role of Karen Bixen,
used a *slightly* changed line – "When the gods want to punish you, they answer your prayers" –
in        the        1985        movie        *Out        of        Africa*.
http://tvtropes.org/pmwiski/pmwiki.php/Quotes/BeCarefulWhatYouWishFor   (last   visited   Jan.
10, 2011).

[8]       By mentioning this proverb-type adage, I am by no means commenting on the likelihood
that Defendant will file a motion to decertify or, if filed and referred to me for a report and

### III.    Production of List of Putative Class Members

Plaintiff requests that the Court order Defendant to provide him with a list of all putative class members' names and addresses in order to effectuate the notice process.  (DE# 74, p. 19.) Plaintiff cited several cases supporting his request.  *E.g.*, *Anglada v. Linens 'N Things, Inc.*, No. 06 CV 12901(CM)(LMS), 2007 WL 1552511, at *8 (S.D. N.Y. May 29, 2007) (granting same request).  I believe this is a reasonable request given that the same information would likely be available through a formal request for production or interrogatory and without this information Plaintiff will be unable to effectuate any order granting conditional certification.  *See Morden v. T-Mobile USA, Inc.*, No. C05-2112 RSM, 2006 WL 17279987, at *3 (W.D. Wash. June 22, 2006) (granting motion to compel all names of those in putative class before conditional certification because the names are necessary to allow plaintiffs to properly define class).

Defendant did not object to or discuss this request in any way in its response.  At the hearing, defense counsel confirmed that it could produce such a list within 30 to 45 days.  More specifically, defense counsel explained that his client could likely obtain the information in significantly less time for certain employees but noted that Defendant had merged with Cingular (another wireless telephone company) and the information concerning the former Cingular employees might take more time to retrieve.

Consequently, I respectfully recommend that if the District Court adopts my recommendation and conditionally certifies the requested class, that the District Court also order Defendant to provide Plaintiff with a list of all putative class members' names and addresses for the sole purpose of carrying out notice.  Consistent with Defendant's representations at the

recommendation, that I will recommend granting it.  To the contrary, I am expressly pointing out that this Report is based on a standard which will be *different* than that applied at the decertification stage after completion of discovery.  At this stage, I do not know the evidence which discovery will yield, so it would be premature to make wild predictions on a purely speculative motion which might never get filed.

hearing as to the time necessary to produce the information, I also respectfully recommend that the District Court order Plaintiff to provide the names of putative class members that were its employees prior to the merger within 30 days, but to allow it 45 days to provide names of those putative class members who became its employee after that merger.

### IV.  Content of Proposed Notice

Plaintiff attached a proposed notice to its motion and requested that it be allowed to notify all potential class members by mail and that the notice be posted at each of Defendant's locations at which such potential class members are employed. (DE# 77-1.) Defendant did not object to the content of this notice or Plaintiff's request that it be posted at such locations either in its response or at the hearing.  I have personally reviewed the notice and find that it adequately and clearly informs all putative class members not only of their right to join this lawsuit and its consequences, but also their right not to join this lawsuit and the consequences of that decision. *See Anglada*, 2007 WL 1552511 at **8-9.  Moreover, the notice further notifies all putative class members that they may join this lawsuit not only by agreeing to be represented by Morgan & Morgan, but also by engaging counsel of their own choosing.  As to Plaintiff's request that notice be posted at Defendant's pertinent work sites, I see no reason why this request should not be granted and Defendant has not resisted it.

Consequently, I also respectfully recommend that the District Court approve the form and content of Plaintiff's proposed notice and require that Defendant post it as requested.

## V.        Recommendations

For the reasons described above, I respectfully recommend that the District Court:

(1) Conditionally certify the following class:

> All Retail Account Executives who were paid salary plus
> commissions and who earned less than $100,000.00 per year for
> any period of their employment, with Defendant, AT&T Mobility
> Services LLC, within the statute of limitations and who were not
> paid full and proper overtime compensation for hours worked over
> forty (40) in a workweek.

(2)  Order Defendant to provide Plaintiff with a list of the names and addresses of all

putative class members within the time frames discussed above; and

(3) Authorize Plaintiff to effect notice by mailing their proposed notice via the United

States Postal Service, first class mail, to all putative class members, and to order

Defendant to post a copy of this notice, along with the Consent to Become Party

Plaintiff attached to the proposed notice, at each of Defendant's locations at which

such potential class members are employed.

Case No. 10-CV-20837-COOKE/GOODMAN

## VI.     Objections

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties have fourteen (14) days after being served with a copy of this Report and Recommendations to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Judge.  Each party may file a response to the other party's objection within 7 days of the objections.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this report and bar the parties from attacking on appeal the factual findings contained herein.  *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (citing *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988)).

**RESPECTFULLY RECOMMEND**, in Chambers, in Miami, Florida, this 10th day of January, 2011.

_____

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**

The Honorable Marcia G. Cooke

All counsel of record