UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:    1:10-cv-20837-MGC

RUBEN REYES, and JEFFREY BATTLES,
on their own behalf and all
similarly situated individuals,

      Plaintiff,

v.

AT&T MOBILITY SERVICES LLC,
A foreign limited liability company,

      Defendant.
_____/

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE, AND APPROVAL OF FLSA SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

# **TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1

    I       Factual and Procedural Background..................................................................1

          A.     Factual Allegations ...........................................................1

          B.     Procedural History ...........................................................2

          C.     Discovery............................................................................2

          D.     Settlement Negotiations..................................................3

    II. Summary of the Settlement Terms.......................................................................3

          A.     The Settlement Fund .......................................................3

          B.     Release ...............................................................................4

          C.     Eligible Employees ..........................................................4

          D.     Allocation Formula .........................................................5

          E.     Attorneys' Fees and Litigation Costs ..........................5

          F.     Service Awards ................................................................6

          G.     Settlement Claims Administrator .................................6

    III. Class Action Settlement Procedure .................................................................6

ARGUMENT...............................................................................................................8

    I       Preliminary Approval of the Settlement Is Appropriate ..........................8

          A.     The Settlement Is Fair, Reasonable, and Adequate ................9

               1.     Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1)...............................................10

               2.     The Reaction to the Settlement Has Been Positive (*Grinnell* Factor 2)...................................................................11

               3.     Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)......................11

ii

4.    Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)................................................................ 12

5.    Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6)....................................................... 13

6.    Defendant' Ability to Withstand a Greater Judgment Is Not Clear (*Grinnell* Factor 7) ........................................................14

7.    The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ..................................................... 14

II.    The Proposed Notices Are Appropriate............................................ 15

III.    Plaintiffs Will Seek Approval of the FLSA Settlement................................. 16

CONCLUSION .......................................................................................... 17

## INTRODUCTION

Subject to Court approval, the parties have settled Plaintiffs' claims on a class-wide basis for significant monetary relief of $3,287,500.00, plus interest. The proposed settlement satisfies all of the criteria for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure, as well as the criteria for approval under the FLSA. With this motion, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Joint Stipulation of Settlement and Release ("Settlement Agreement"), attached as **EXHIBIT B** to the Declaration of Andrew Frisch in Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Frisch Decl."); (2) approve the proposed Notices of Class Action Settlement ("Notice"), attached as **EXHIBITS C-E** to the Frisch Declaration, and direct its distribution; (3) approve the proposed schedule for final settlement approval; and (4) approve the FLSA Settlement as a fair and reasonable settlement of a bona fide dispute.

## I.      Factual and Procedural Background

### A.      Factual Allegations.

Plaintiffs, RUBEN REYES ("Reyes") and JEFFREY BATTLES ("Battles")(collectively "Plaintiffs") are members of a conditionally certified FLSA Collective Action.  Additionally, Battles is a member of the Rule 23 class, comprised of Retail Account Executive and National Retail Account Executive employees (together, "RAEs") who worked for Defendant, AT&T MOBILITY SERVICES LLC ("AT&T" or "Defendant") in California. Battles and the Rule 23 class members are approximately 188 current and former RAEs who work or worked for AT&T, in California. Plaintiffs and the FLSA Collective Action class members are approximately 157 current and former RAEs who work or worked for AT&T throughout the United States.

1

Plaintiffs' job duties involved primarily developing and maintaining supportive relationships with Defendant's existing accounts, as assigned to them by Defendant. To ensure that all RAEs performed these duties in a uniform and consistent manner, Defendant had specific training programs that it required all of its RAEs to complete on a regular basis, regarding Defendant's ever-changing line-up of products and services. After receiving their specific training on products, services and contracts from Defendant, it was and is the job of every RAE to go to his or her assigned accounts and relay the information that has been given to them in their required training programs. Plaintiffs alleged that AT&T violated the Fair Labor Standards Act ("FLSA") and various California laws, rules and wage orders, by misclassifying them as administratively exempt and failing to pay them overtime when they worked more than 40 hours in a workweek, and similarly failing to comply with California law in several respects. *See* Second Amended Complaint, D.E. 186.

**B.    Procedural History.**

Plaintiff Ruben Reyes ("Reyes") filed a complaint on March 18, 2010, alleging violations of the FLSA as a result of Defendant's alleged misclassification of certain individuals working as RAEs. *See* Frisch Decl., ¶ 12. The complaint sought certification, pursuant to Section 216(b) of the FLSA, of a nationwide collective action. *See id.*

The parties vigorously disputed both the merits of the Complaint's (and Amended Complaint's) allegations and whether the Litigation was appropriate for conditional certification.

On February 28, 2011, the Court entered an Order conditionally certifying the Litigation as a collective action pursuant to 29 U.S.C. 216 (b). *See* Frisch Decl., ¶ 16.

Pursuant to Court-approved notice, notice was sent out to approximately 1,579 individuals who worked in Covered Positions during the Covered Period, and thus given an

opportunity to join the Litigation under the terms of 29 U.S.C. § 216(b).  *See id.*, ¶ 18. individuals were deemed by counsel for the Parties to have joined the Litigation by submitting opt-in forms.  *See* Frisch Decl., ¶ 34.

As a result of additional investigation conducted by Class Counsel, 188 individuals have been identified who worked as RAEs in the State of California and who are asserting claims under California state law (the "Rule 23 class").  *See* Frisch Decl., ¶¶ 16, 34.

Based on additional investigation done by Plaintiffs' Counsel, Plaintiff' Counsel has filed a Second Amended Class/Collective Action Complaint ("Amended Complaint") in the Litigation, on behalf of Reyes and Battles.  *See* D.E. 186.

The Amended Complaint asserts class action claims under the California Labor Code ("CLC") and collective action claims under the FLSA and seeks recovery of, among other things, unpaid overtime wages, liquidated damages, and attorneys' fees and costs.  *See id.*

### C.    <u>Discovery</u>.

The parties engaged in significant discovery before agreeing to resolve this case. The parties served and responded to interrogatories and document requests for 7 Plaintiffs and other opt-in Plaintiffs and Rule 23 class members. *Id*. Defendant produced thousands of pages of documents in response to Plaintiffs' document requests, including corporate policies, training materials, payroll records, personnel files, production reports, emails, and memoranda. *Id*. ¶¶ 22-23.  In addition, Plaintiffs interviewed approximately 100 opt-in Plaintiffs regarding their duties and hours worked. *Id*.

### D.    <u>Settlement Negotiations and Mediations</u>.

The Parties attended two full-day mediations prior to resolving the case.  The Parties participated in an all-day mediation on December 5, 2011, with the assistance of Mediator

Hunter Hughes, Esq. of Rogers & Hardin, LLP in Atlanta, Georgia. *See id.*, ¶¶ 24-26. Mr. Hughes is one of the most knowledgeable and skilled wage and hour class action mediators in the country. *See id.*, ¶ 17. In that mediation, Defendant provided Class Counsel with additional information about the facts underlying the claims made in the Litigation. *See id.* That mediation was unsuccessful, and ultimately ended in an impasse, as the Parties continued to pursue their various claims and defenses in the Litigation. *See id.*, ¶¶ 18 24.

Following the dissemination of the Notice to the putative FLSA Class, and additional discovery, pursuant to the Court's Order requiring same, the Parties participated in a second all-day mediation on July 23, 2012 with Mr. Hughes. *See id.*, ¶ 25; *see also* D.E. 168 (Order referring case to second mediation). This mediation resulted in the Parties' agreement to a term sheet summarizing the key points of the settlement reflected in the Settlement Agreement. *See id.*, ¶ 25. A copy of the term sheet is attached to the Frisch Declaration as **EXHIBIT A**. *See id.*, ¶ 25. After additional negotiation, the Parties have now reduced their agreement to a formal Settlement Agreement, which they are presenting to the Court for preliminary approval. *See id.*, ¶ 26; *see also* Exhibit B to Frisch Decl.

## II.     Summary of the Settlement Terms

### A.     The Settlement Funds.

AT&T has agreed to create a Settlement Fund of up to $3,287,500.00 ("the Fund"). Ex. B (Settlement Agreement) ¶¶ 1.17 and 3.2(A). Of the Settlement Fund, two common funds will be established. *See id.* Thirty (30%) will be allocated to the FLSA Class members and seventy (70%) will be allocated to the Rule 23 Class members. *See id.* The Fund will cover awards to class members, Court-approved attorneys' fees and costs, Court-approved service payments, costs associated with the second mediation with Hunter Hughes, and the cost of

administering the settlement. *Id.*, ¶ 3.13.[1] In addition to the Fund, AT&T is responsible for paying the employer's share of employment taxes, including federal and state payroll taxes, the employer's share of the FICA tax, and any federal and state unemployment tax due on the portion of class members' settlement awards that is allocated to wages. *Id.*

## B. <u>Release</u>.

Rule 23 Class members who do not opt out of the settlement will release all California wage and hour claims that were brought in the litigation or that are based on the same facts and circumstances as the claims in the litigation. *Id.* ¶ 3.9(A).  FLSA Class members will release their FLSA claims, as well as their respective state wage and hour claims[2], by endorsing the release printed on their settlement checks. *Id.*

## C. <u>Eligible Employees</u>.

The Rule 23 class consists of 188 current and former RAEs who work or worked for AT&T in California at any time between May 1, 2008, and the date on which the Court grants preliminary approval of the settlement and who worked for Defendant, except for those who opt out. Ex. B (Settlement Agreement) ¶ 1.7. The FLSA class consists of the 157 current and former RAEs who work or worked for Defendant anywhere in the United States at any time from three (3) years prior to the date they filed their Consent to Join the lawsuit[3], through the date on which the Court grants preliminary approval of the settlement. Ex. B (Settlement Agreement) ¶ 1.14.

---

[1] To the extent Rule 23 Class Members elect not to submit a claim, amounts allocated to such class members shall revert back to AT&T.

[2] FLSA Class members who elect to opt-out of the Rule 23 class will ***not*** waive their California state wage and hour claims.

[3] The FLSA Class includes all opt-in Plaintiffs who either filed a Consent to Join in this case, or filed a Notice of Filing same.  It also includes 2 opt-ins who did not file a Consent to Join, but who the parties have stipulated to include in the settlement, as well as several opt-ins who filed a Notice of Filing their Consents to Join, but whom did not actually file a Consent to Join. *See* Ex. B, ¶ 1.14.

### D.     Allocation Formula.

Both FLSA Class members and Rule 23 Class members who do not opt out will be paid pursuant to an allocation formula based on their dates of employment during the applicable limitations periods.  *Id.* ¶ 3.15(C).  No eligible class member will receive an award that is less than $100.00 before taxes are deducted. *Id.* ¶ 3.15(B). Settlement awards will be allocated 50% to wages and 50% to interest and liquidated damages. *Id.*¶ 3.6(A).  Pursuant to the allocation formula(s), FLSA class members will receive an average of $6,362.90[4], before attorneys' fees, costs, and administration fees are deducted ($4,199.51 net of these amounts), while Rule 23 class members will receive an average of $12,240.69 ($8,078.86 net of these amounts).  *See* Frisch Decl., ¶ 28.

### E.     Attorneys' Fees and Litigation Costs.

Plaintiffs' counsel will apply for one third of the Fund as attorneys' fees ($1,094,737.50) and will seek reimbursement of their costs as well.[5] *Id.*, ¶ 3.3(A). Plaintiffs' counsel will file a formal motion for approval of fees and costs along with their motion for final approval of the

---

[4] Because Dual Class Members—those who are members of both the FLSA class and Rule 23 class—may elect to receive their payment from either common fund (but not both), and the vast majority are expected to elect their Rule 23 share, the remaining FLSA class members shares are expected to proportionally increase.

[5] This is a within the range of typical fee award in a common fund case.  *See, e.g., Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012)("One-third of the recovery is considered standard in a contingency fee agreement."); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation…' ") (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. April 18, 2012)(class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6 (M.D. Fla.  Dec. 29, 2011)(approving class settlement with one-third of maximum common fund apportioned as attorneys fees); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 1:95–cv–02152–ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 1:99–md–01317–PAS, Doc. No. 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis).

settlement. *See* Fed. R. Civ. P. 23(h) & 54(d)(2).

The Settlement Agreement is not conditioned on the award of attorneys' fees, and explicitly states that it is to be considered separately from any application for attorneys' fees. Ex. B (Settlement Agreement) ¶ 3.3(A).  The Court need not decide the attorneys' fees and costs issue now, with respect to the Rule 23 Class settlement.

### F.   Service Awards.

In addition to their individual awards under the allocation formula, Plaintiffs and the one (1) opt-in Plaintiff who actively participated in the Litigation will apply for additional payments in recognition of the services they rendered on behalf of the class ("Service Awards"). Ex. B (Settlement Agreement) ¶ 3.4.

Such service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation." *Khait*, 2010 WL 2025106, at *9; *see also Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012)(discussing the public policy reasons for incentive/service awards to class representatives). Like the application for attorneys' fees, the Settlement Agreement is not conditioned on the award of Service Awards. Ex. B (Settlement Agreement) ¶ 3.4. Plaintiffs will file a motion for approval of Service Awards along with their motion for final approval of the settlement, and also address same here, to the extent that a portion of same are payable from the common fund allocated to the FLSA Settlement.

### G.   Settlement Claims Administrator.

The parties have selected Simpluris to serve as the settlement claims administrator. The claims administrator's fees will be paid out of the Fund. Ex. B (Settlement Agreement) ¶ 2.1.

### III.   <u>Class Action Settlement Procedure</u>

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements that include three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §§ 11.22 *et seq.* (4th ed. 2002); *Willix*, 2011 WL 754862, at *1-2; *Khait*, 2010 WL 2025106, at *1. This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. With this motion, Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, and approving the proposed Notice and authorizing the claims administrator to send it. The parties respectfully submit for the Court's approval the following schedule for final resolution of this matter:

1. Within 15 days of the Court's grant of preliminary approval, the claims administrator will mail the Notice to class members. Ex. B (Settlement Agreement) ¶ 2.4(B).

2. Class members will have 45 days after the date the Notice is mailed to opt out of or object to the settlement ("Notice Period"). *Id.*, ¶ 2.4(C).

3. A final fairness hearing will be held as soon as is convenient for the Court.

4. Plaintiffs will file a Motion for Final Settlement Approval no later than 14 days before the fairness hearing. *Id.,* ¶ 2.7.

5. After the fairness hearing, if the Court grants Plaintiffs' Motion

for Final Settlement Approval, the Court will issue a Final Order and Judgment. If no party appeals the Court's Final Order and Judgment, the "Effective Date" of the settlement will be 30 days after the Court enters its Final Order and Judgment. *Id.*, ¶ 1.12.

6.      If an individual or party appeals the Court's Final Order and Judgment, the "Effective Date" of Settlement shall be the day after all appeals are finally resolved in favor of final approval and the time for any further appeal, rehearing, or reconsideration has expired. *Id.*

7.      The Settlement Claims Administrator will disburse settlement checks to class members, Court-approved attorneys' fees and costs, and Court-approved service awards within 14 days of the Effective Date. *Id.*, ¶ 3.2(C).

8.      Amounts that are unclaimed or that were allocated to class members who opt-out of the settlement shall revert to the Defendant.  *Id.* ¶¶ 2.5(C), 3.15(F).

## ARGUMENT

## I.      The Rule 23 Settlement Class Satisfies the Requirements of FRCP 23.

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litiq.,* 552 F.2d 1088, 1105 (5th Cir.1977). Before a settlement may be approved, however, a number of prerequisites must be established. First, the Court must certify the settlement class. Fed.R.Civ.P. 23(c). Second, the Court must determine preliminarily whether the settlement is fair and adequate.  *See In re Checking Account Overdraft Litiq.,* No. 09–MD–02036–JLK, 2011 WL 5873389, at *6 (S.D.Fla. Nov.22, 2011); Fed.R.Civ.P. 23(e)(2), (e)(1).

To certify a class for settlement purposes the Court must determine whether the prescriptions of Federal Rule of Civil Procedure 23 are satisfied.  *See, e.g., Morefield v. NoteWorld, LLC*, 2012 WL 1355573, at *2 (S.D. Ga. April 18, 2012).  Specifically, certification

9

requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). *See id.* Here, the settlement class satisfies the requisite Rule 23 factors detailed below. Thus, the Court should certify the settlement class.

**A. <u>Numerosity</u>.**

Here, there are 188 members of the proposed Settlement Class, from all over the State of California, the largest state in the United States. For a variety of reasons, their joinder is impracticable. Thus, the Rule 23(a)(1) numerosity requirement is met. *See Kilgo v. Bowman Trans.,* 789 F.2d 859, 878 (11th Cir.1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

**B. <u>Commonality</u>.**

The threshold for commonality under Rule 23(a)(2) is not high. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted); *see also Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 313 (S.D.Fla.2001) (same). Here, the commonality requirement is satisfied because there are multiple questions of law and fact that center on AT&T's class-wide pay policies and practices pertaining to its Retail Account Executives and National Retail Account Executives throughout California, and are common to the Settlement Class.

**C. <u>Typicality</u>.**

The Plaintiffs' claims are typical of the Settlement Class for purposes of this settlement because they concern the same alleged AT&T pay policies and practices, arise from the same legal theories, and allege the same types of harm and entitlement to relief. Therefore, Rule 23(a)(3) is therefore satisfied. *See Komberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337

(11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir.2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

### D.  **Adequacy.**

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the Settlement Class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *See Fabricant,* 202 F.R.D. at 314. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the Plaintiffs and the Settlement Class, and Plaintiffs have retained competent counsel to represent them and the Settlement Class. Class Counsel here regularly engages in wage and hour class litigation and other complex litigation similar to the present Action, and have dedicated substantial resources to the prosecution of the Action. Moreover, the Plaintiffs and Class Counsel have vigorously and competently represented the Settlement Class Members' interests in the Action. *See Lyons v. Georgia–Pacific Corp. Salaried Employees Ret. Plan,* 221 F.3d 1235, 1253 (11th Cir.2000).

### E.  **Predominance and Superiority.**

Rule 23(b)(3) is satisfied for settlement purposes, as well, because the common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for millions of Settlement Class Members in a single, coordinated proceeding is superior to close to two hundred (200) individual lawsuits addressing the same legal and factual issues. With respect to predominance, Rule 23(b)(3) requires that "[c]ommon issues of fact and law ... ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member."

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs, Inc.,* 601 F.3d 1159, 1170 (11th Cir.2010) (internal quotation marks omitted). Here, the predominance requirement is satisfied for settlement purposes because common questions present a significant aspect of the case and can be resolved for all Settlement Class Members in a single common judgment. See In re Checking Account Overdraft Litigation, 2012 WL 4173458, at *3 (S.D. Fla. Sept. 19, 2012).

In sum, all of Rule 23's requirements are met for the purposes of certifying a settlement class. Thus, the Court should preliminarily certify the settlement class.

**II.      Preliminary Approval of the Settlement Is Appropriate**

The law favors compromise and settlement of class action suits. *See In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir.1992) (noting that "public policy strongly favors the pretrial settlement of class action lawsuits."); *Newberg* § 11.25 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Leverso v. SouthTrust Bank of Ala.,* 18 F.3d 1527, 1531 (11th Cir.1994). In exercising their discretion, courts should give "proper deference to the private consensual decision of the parties." *Torres v. Gristede's Operating Corp.*, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (internal quotation marks omitted).

At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the "range of reasonableness." 4 Newberg § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.,* 2010 WL 2401149, at *2 (S.D.Fla. Jun.15, 2010). Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary

finding of fairness. *See Manual for Complex Litigation,* Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg* § 11.25. A proposed settlement should be preliminarily approved if it "is 'within the range of possible approval' or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement." *Fresco v. Auto Data Direct, Inc*., 2007 WL 2330895, at *5 (S.D. Fla. May 14, 2007)(quoting *Armstrong v. Board of School Directors,* 616 F.2d 305, 312 (7th Cir.1980)); *see Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness... and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members); *Danieli v. IBM*, No. 08 Civ. 3688, 2009 WL 6583144, at *4 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where the settlement "ha[d] no obvious defects" and the proposed allocation plan was "rationally related to the relative strengths and weaknesses of the respective claims asserted").

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). "[A] court, absent fraud, collusion, or the like, should be hesitant to substitute

its own judgment for that of counsel." *Canupp v. Liberty Behavioral Healthcare, Corp.,* 447 2011 WL 6003986 (11th Cir. 2011)(quoting *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)).

The first step in the settlement process simply allows notice to issue to the class and for class members to object or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

### A.    The Settlement Is Fair, Reasonable, and Adequate.

In evaluating a class action settlement, courts in the Eleventh Circuit consider the six factors set forth in *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984).

Although the Court need not evaluate the *Bennett* factors in order to conduct its initial evaluation of the settlement, it may be useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Bennett* factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See id.*

Here, all of the *Bennett* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

### 1.    The Likelihood of Success at Trial.

Although Plaintiffs' believe their case is strong, it is not without risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969);

*see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 356 (internal quotation marks omitted).

A trial on the merits would involve significant risk as to both liability and damages. Although Defendant would bear the burden of proving that Plaintiffs are administratively exempt, such a determination would require the parties to put on substantial evidence regarding the duties of Plaintiffs and class members and the corporate policies that applied to them. If the Court determined that Plaintiffs were not exempt, Plaintiffs would still be required to prove the amount and extent of overtime that they worked largely through their testimony alone because Defendant did not keep accurate records of their hours.

While Plaintiffs believe that they could ultimately defeat Defendant's defenses and establish liability, this would require significant factual development and favorable outcomes at trial and on appeal, all of which is inherently uncertain and lengthy. The proposed settlement alleviates this uncertainty. This factor weighs in favor of preliminary approval.

## 2.  Range of Possible Recovery and Range at Which Settlement is Fair.

The relief sought in the Settlement is reasonable and within the range of remedies permitted by law.  It is impossible to calculate Plaintiffs' potential damages with any certainty, in light of the fact that the Defendant did not keep records of their time worked, under the assumption that Plaintiffs were exempt.  However, Plaintiffs estimated that they worked, on average, anywhere between approximately 1-15 overtime hours per week.  Under the settlement, each class member will receive credit for approximately 5-6 hours of overtime worked during

each eligible week.  Thus, each class member is receiving approximately 40-50% of his or her best day in court.  "While Class Members' damages could exceed the amount provided in the Settlement, the Plaintiffs have no guarantee they will prevail."  *Waters v. Cook's Pest Control, Inc.*, 2012 WL 2923542, at *13 (N.D. Ala. July 17, 2012); *see also   Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *In re: Newbridge Networks Securities Litigation*, 1998 WL 765724, at *2 (D.D.C. October 23, 1998) ("an agreement that secures roughly six to twelve percent of a *potential* recovery ... seems to be within the targeted range of reasonableness").

When the Settlement here is taken as a whole, the relief proposed is fair, adequate, and reasonable when compared to the range of possible recovery in this action.

### 3.  <u>Litigation Through Trial Would Be Complex, Costly, and Long</u>.

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with approximately 188 rule 23 class members and claims under federal and state law.

Although there has been significant discovery already, additional discovery would be required to establish liability and damages, including depositions of class members and Defendant's employees and managers, as well as Defendant's outside Human Resources consultant(s) on whom it relied for its "good faith" defense. Further, although the Court

conditionally certified an FLSA Collective Action, the Court made clear in its Order that there were issues that could and would likely be revisited if the case had progressed. Further, it Defendant would have opposed certification of the Rule 23 class had the matter not resolved, and sought to decertify same, even in the event that the Court ultimately certified a Rule 23 class..   Indeed, Defendant would likely have sought to decertify one or both of the classes, adding additional uncertainty to the future of the litigation.

In addition, the parties likely would have filed cross-motions for summary judgment on Defendant's exemption defense(s). If the Court denied the motions, a fact-intensive trial would be necessary to determine Plaintiffs' and the class's exemption status. Preparing for and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. Even if Defendant's exemption defense failed, a trial on damages would be costly and defer closure. Any judgment would likely be appealed, extending the duration of the litigation. The settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 4.   <u>The Reaction to the Settlement Has Been Positive.</u>

Although notice of the settlement has not yet issued to the class, the named Plaintiffs have expressed their approval of the settlement by signing the Settlement Agreement. Further, to the extent Plaintiffs' counsel has received inquiries from class members regarding the settlement, all class members have reacted favorably to the settlement to date. After notice issues and class members have had an opportunity to weigh in, the Court can more fully analyze this factor.  *See* Frisch Decl., ¶ 35.

### 5.   <u>Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly.</u>

The parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement... but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted). The parties' discovery here meets this standard. As discussed above, both parties responded to and propounded discovery requests, resulting in the exchange of thousands of pages of documents, including AT&T corporate policies, payroll records, class-wide payroll and workweek information, and emails. Frisch Decl. ¶¶ 22-23.  Defendant also received voluminous documents from the initial Plaintiffs opt-in Plaintiffs and Rule 23 class members. *Id*. ¶ 23.  In addition, Plaintiffs' counsel interviewed dozens of Plaintiffs, opt-in Plaintiffs and Rule 23 class members about their job duties and hours worked. *Id*.

Based on these circumstances, the parties were well equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information regarding the defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Khait*, 2010 WL 2025106, at *4-5 (approving settlement where the parties exchanged payroll and time data and policies and procedures and where plaintiffs interviewed numerous opt-ins regarding their duties and hours worked). This factor also weighs in favor of preliminary approval.

### III.   The Proposed Notices Are Appropriate.

The contents of the proposed Notices, which are attached as Exhibits C and D to the Frisch Decl., fully comply with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice satisfies each of these requirements. It also explains the allocation formula, the basis on which each class member's award was determined, and the allocation of attorneys' fees and costs, and provides specific information regarding the date, time, and place of the final approval hearing and how to object to or exclude oneself from the settlement. This information is adequate to put class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the claims administrator will mail the Notice to the last known address of each class member within 15 days of the Court's preliminary approval order. Ex. B (Settlement Agreement) ¶ 2.4(B). The claims administrator will take all reasonable steps to obtain the correct address of any class members for whom notices are returned as undeliverable. *Id*. Class Members will have forty-five (45) days to opt out of or object to the settlement. *Id.,* ¶¶ 2.4(C), 2.5(A). Within fourteen (14) days of the Effective Date of the Settlement, the claims administrator will mail class members their payments. *Id.,* ¶ 3.2(C).

## IV.   <u>Approval of the FLSA Settlement is Appropriate.</u>

Plaintiffs also seek approval of the settlement of the FLSA claims separately from the

19

Rule 23 claims. FLSA claims are brought as a "collective action," in which employees must affirmatively "opt in" to the litigation, unlike the procedure under Rule 23. *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) ("[t]here is no opt-in requirement, analogous to the procedure authorized by the FLSA, under the [state law]"). Because under the FLSA "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *6 (E.D.N.Y. Jan. 20, 2010)("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.") Accordingly, the high standard for approval of a class action settlement under Rule 23 does not apply to an FLSA settlement.

A. **Standard of Review.**

Pursuant to the case law of this Circuit, judicial review and approval of this tentative settlement is necessary to give it final and binding effect. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor,* 679 F.2d 1350 (11th Cir. 1982). As the Eleventh Circuit held in *Lynn,*

> "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them…The only other route for compromise of FLSA claims is provided in the context suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."

*Id.* at 1352-53

20

Before approving an FLSA settlement, the court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. In determining whether the settlement is fair and reasonable, the Court should consider the following factors:

    (1)    the existence of fraud or collusion behind the settlement;

    (2)    the complexity, expense, and likely duration of the litigation;

    (3)    the stage of the proceedings and the amount of discovery completed;

    (4)    the probability of plaintiff's success on the merits;

    (5)    the range of possible recovery; and

    (6)    the opinions of the counsel.

*See Leverso v. South Trust Bank of Ala., Nat. Assoc.,* 18 F.3d 1527. 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.,* No. 6:05-cv-592-Orl-22JGG, 2007 U.S. Dist. LEXIS 10287, at *2-3, (M.D. Fla. Jan. 8, 2007); *see also Hill v. Florida Industrial Elec., Inc.,* No. 6:06-cv-915-Orl-31-JGG, 2007 U.S. Dist. LEXIS 9498, at *6, (M.D. Fla. Feb. 9, 2007); *Pacheco v. JHM Enterprises, Inc., et al.,* No. 6:05-cv-1247-Orl-JGG, at *4 (M.D. Fla. Apr. 12, 2006). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *Hamilton,* 2007 U.S. Dist. LEXIS at *2-3; *see also Cotton v. Hinton.*559 F.2d 1326, 1331 (5th Cir. 1977)

### B.    All of the Relevant Criteria Support Approval of the FLSA Settlement.

First, courts have found no fraud or collusion where both parties were represented by counsel and the amount to be paid to the plaintiff seem fair. *See Helms v. Central Fla. Reg. Hosp.,* No. 6:05-cv-383-Orl-22JGG, 2006 U.S. Dist. LEXIS 92994, at *11-12 (M.D. Fla. Dec.

21, 2006). Here, each party was independently represented by counsel. Plaintiffs were represented by Andrew Frisch, and Richard Celler, of Morgan & Morgan, as and Defendant was represented by Tom Gies, and Wendy Sugg, of Crowell & Moring, LLP, as well as Daniel Blonsky and Benjamin Brodsky of Coffey Burlington. All counsel involved (on both litigation teams) have extensive experience in litigating claims wage and hour class and collective actions, including claims for unpaid overtime compensation. Each counsel was obligated to and did vigorously represent their clients' rights. Based on the amount to be paid to Plaintiffs, it is clear that were was no fraud or collusion.

The complexity, expense, and length of future litigation also militate in favor of this settlement. Plaintiffs and Defendant continue to disagree over the merits of the claim asserted by Plaintiffs. Plaintiffs contend Defendant did not accurately maintain an accurate record of the hours they worked or pay them all the overtime compensation to which they were entitled under the FLSA. Defendant maintains that its records were accurate and that Plaintiffs have been compensated in accordance with the overtime requirements of the FLSA. Specifically, Defendant maintains that it has a strong exemption defense under the FLSA's administrative exemption. If the parties continued to litigate this matter, they would be forced to engage in costly and protracted litigation in order to prove their claims and defenses. This settlement, therefore, is a reasonable means for both parties to minimize future risks and litigation costs.

Third, there have been sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter. The parties exchanged information regarding Plaintiffs' hours and pay during informal discovery conducted by both parties. In agreeing upon the proposed settlement, the parties had sufficient information and had conducted an adequate investigation to allow them to make an educated and informed analysis and

conclusion.

Plaintiffs' probability of success on the merits and the amount they would be awarded is also uncertain, further suggesting that this settlement is fair and appropriate. Plaintiffs assert, and Defendant denies, they are owed overtime compensation due to Defendant's alleged violation of the FLSA. The range of possible recovery by Plaintiffs is also open to dispute. Even if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and exercise of resources by both parties, the amount of their recovery is uncertain.

The last element of the Court should evaluate in determining fairness of the settlement is the reasonableness of the proposed attorneys' fees. *See Helmes v. Central Fla. Reg. Hosp.,* No. 6:05-cv-383-Orl-22JGG, 2006 U.S. Dist. LEXIS 92994, at *6-7, (M.D. Fla. Dec. 21, 2007); *Strong v. BellSouth Telecomms., Inc.,* 137 F.3d 844, 849-50 (5th Cir. 1998).  Courts have held, however, that it is unnecessary to inquire into the reasonableness of the hourly rate charged by Plaintiffs' counsel where both parties stipulate as to the reasonableness of the attorney's fees, as here. *Id.* at 12.  Nonetheless Plaintiffs provide information pertaining to the attorneys fees that have been negotiated, payable as a third of the common fund, for the Court's review below.

    1.  <u>**Payments to Each Plaintiff and Opt-in Plaintiff**</u>.

Pursuant to the settlement agreement, a common fund will be established and each Plaintiff and Opt-in Plaintiff who has filed a Consent to Join the case will receive an amount based on his or her eligible weeks of employment within the respective class periods.  Although the amount of each individual Plaintiff and Opt-in Plaintiffs' recovery will vary based on their eligible weeks of employment, the settlement represents a significant percentage of the recovery that Plaintiffs would have achieved had they prevailed on all of their claims and survived an appeal. On average, each FLSA class member will recover approximately $6,362.90, before

attorneys' fees, costs, and administration fees are deducted ($4,199.51 net of these amounts).[6]

### 2. __Service Payments.__

The Settlement Agreement (regarding the FLSA Class) provides modest service payments to the named Plaintiffs and one opt-in Plaintiff who joined this case prior to settlement and assisted in the discovery process.  *See* Settlement Agreement at 3.4. The service payments are to recognize plaintiffs, whose time and dedication participating in the investigation, discovery, and mediation made a settlement possible.   These service payments range from $2,500.00 to $5,000.00 for a total of $10,000. *See* Doc. No. 51–3 at Ex. 2–A. The total amount of service payments represents less than 1% of the settlement fund.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca–Cola Co.,* 200 F.R.D. 685, 694 (N.D.Ga.2001) (quoting *In Re S. Ohio Correctional Facility,* 175 F.R.D. 270, 272 (S.D.Ohio 1997)); *see Su v. Elec. Arts, Inc.,* No. 6:05–cv–131–Orl–28JGG, 2006 WL 4792780, at *1, 2 (M.D.Fla. Aug.29, 2006) (unpublished Report and Recommendation), adopted, 2007 WL 2780899 (M.D.Fla. Sept.20, 2006) (unpublished); *see also Sheppard v. Consol. Edison Co. of N.Y., Inc.,* No. 94–CV0403(JG), 2002 WL 2003206, at *6 (E.D.N.Y. Aug.1, 2002) (unpublished) (collecting cases). "Such awards are justified when the class representatives expend considerable time and effort on the case, especially by advising counsel, or when the representatives risk retaliation as a result of their participation." *Ingram,* 200 F.R.D. at 694.

Given the amount of time and effort put forth by the named Plaintiff and original opt-in

---

[6] Dual Class Members will choose to participate in either the FLSA Class or the Rule 23 Class, but they will not receive damages from both common funds.  Because the Rule 23 shares will be greater for such Dual Class Members it is anticipated that the majority of Dual Class Members will elect their (larger) Rule 23 share.  As such, as the FLSA class size is reduced, each remaining FLSA Class Member is anticipated to receive a greater amount from the FLSA Settlement common fund.  *See* Frisch Decl., fn 3.

Plaintiff and the inherent risk taken, and upon consideration of the amounts proposed, the undersigned finds the service payments are reasonable and should be awarded.

### 3.  **Plaintiffs' Request for Attorneys' Fees**.

Plaintiffs' counsel requests an award of attorneys' fees in the amount of $325,462.50 (which represents 33.3% of the common fund created for the FLSA Class) to be paid from the common fund established for the FLSA class.  An award of reasonable attorneys' fees and costs is mandated under 29 U.S.C. § 216(b) if the employer is held liable. *See* 29 U.S.C. § 216(b) (indicating the court shall "allow a reasonable attorney's fee to be paid by the defendant"). "In collective FLSA actions, the court has a duty to determine the reasonableness of the proposed attorneys' fees as part of the fairness determination." *Dail v. George A. Arab, Inc.,* 391 F.Supp.2d 1142, 1146 (M.D.Fla.2005) (citing *Strong v. BellSouth Telecom ms., Inc.,* 137 F.3d 844, 849–50 (5th Cir.1998)); *Su,* 2006 WL 4792780, at *3 (citations omitted). However, the FLSA does not require the Court to conduct " 'an in depth analysis ... unless the unreasonableness of such award is apparent from the face of the documents.' " *King v. My Online Neighborhood, Inc.,* No. 6:06–cv–435–Orl–22JGG, 2007 WL 737575, at *4 (M.D.Fla. Mar.7, 2007) (quoting *Perez v. Nationwide Protective Servs.,* No. 6:05–cv–328–ORL–22JGG (M.D.Fla. Oct. 31, 2005)).

Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg,* No. 08 Civ. 7840(PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010).  In class and collective action wage and hour lawsuits, public policy favors a common fund attorneys' fee award. *Reyes v. Altamarea Grp., LLC,* No. 10 Civ. 6451, 2011 WL 4599822, at * 7 (S.D.N.Y. Aug. 16, 2011). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private

attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Johnson v. Brennan,* No. 10 Civ. 4712, 2011 WL 4357376, at * 13 (S.D.N.Y. Sept. 16, 2011); *deMunecas v. Bold Food, LLC,* No. 09 Civ. 440, 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010); *Sand,* 2010 WL 69359, at *3 (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel"). If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Willix,* 2011 WL 754862, at * 6; *McMahon,* 2010 WL 2399328, at * 7; *Sand,* 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

As noted above, in this case the Parties' Settlement Agreement holds that the attorneys' fees and costs incurred by Plaintiffs' counsel are to be paid as a percentage of the total "common fund."  The methodology employed by the parties in settling this case, was based upon prior FLSA jurisprudence from courts around the country, and throughout the Eleventh Circuit, which have agreed that "attorneys who create a common fund [in an FLSA case] are entitled to be compensated for their efforts from a reasonable percentage of that fund."  *Stahl v. Mastec, Inc.*, 2008 WL 2267469, *1 (M.D. Fla. 2008).  Courts have frequently upheld the entitlement of attorneys' fees and costs to be paid from a "common fund" in FLSA cases.  *See Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960, at *5 (M.D. Fla. June 8, 2012)(approving FLSA-only settlement whereby plaintiff's counsel received 30% of the common fund as attorneys fees); *Burkholder v. City of Fort Wayne,* 2010 WL 4457310, at *5 (N.D. Ind. Sept. 21, 2010)(attorneys' fees comprising 33% of common fund in FLSA only case were reasonable and approved by the court); *Grassick v. Avatar Properties, Inc.*, 2008 WL 5099942, at *3 (M.D. Fla.

26

Nov. 25, 2008)(same); *Lepinske v. Mercedes Homes, Inc.*, 2008 WL 2694111, at *4 (M.D. Fla.

July 7, 2008); *Moultry v. Cemex, Inc.*, 8:07-cv-453-T-MSS (M.D. Fla. Aug. 20, 2008)

(percentage of common fund as attorneys' fees in FLSA case approved).

  Counsel expended numerous hours of work on this case and put forth extraordinary

effort, both in and out of Court. Plaintiff's counsel also provided legal advice to all potential opt-

in plaintiffs and all Qualified Claimants. Additionally, as noted above, Defendant does not

contest the reasonableness of the fees requested. Upon consideration, the undersigned finds that

the amount of attorneys' fees requested is reasonable.

<u>**CONCLUSION**</u>

  For the reasons set forth above, Plaintiffs respectfully request that the Court preliminarily

approve the settlement, conditionally certify the settlement class, appoint Plaintiffs' counsel as

Class Counsel, approve the Settlement Notice, and enter the proposed Order.


Dated: November 30, 2012
  Plantation, Florida

       Respectfully submitted,

       **MORGAN & MORGAN, P.A.**

       **/s/ A n d r e w  R.  F r i s c h**
       Andrew R. Frisch
       Richard B. Celler
       600 N. Pine Island Road, Suite 400
       Plantation, Florida 33324
       Telephone:   (954)   318-0268
       Facsimile: (954) 333-3515

       *Attorneys for Plaintiffs and the Proposed Class*

27